Michael K. RILEY, Sr., Respondent,

v.

1987 STATION WAGON, Appellant.

No. C8–01–21.

Court of Appeals of Minnesota.

Oct. 2, 2001.

Michael K. Riley, Sr., Nicollet County Attorney, Michelle M. Zehnder Fischer, Assistant County Attorney, St. Peter, (for respondent).

Cathryn Middlebrook, Legal Assistance to Minnesota Prisoners, Ben Gisselman, (certified student attorney), Minneapolis, (for appellant).

Considered and decided by PETERSON, Presiding Judge, AMUNDSON, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

This appeal is from a judgment ordering forfeiture of appellant's vehicle following a conviction for conspiracy to commit first-degree murder. We affirm.

## FACTS

On September 15, 1998, John Sullivan reported to a North Mankato police officer that a friend, John Duwenhoegger, had contacted him to plan the murder of his girlfriend's son and mother. The police began surveillance of Duwenhoegger and Sullivan cooperated. Sullivan and Duwenhoegger then met four more times to create the murder plan. The meetings were held at Jeff's Superette in North Mankato and each of the meetings were videotaped or audiotaped by police. Duwenhoegger arrived at each of the meetings in his 1987 Jeep, but all four meetings took place inside of Sullivan's vehicle.

On September 21, 1998, the date of the last meeting, Duwenhoegger drove to the meeting point in his Jeep and brought with him a drill, a drill bit, and wire that were to be used to carry out part of the murder plan. After meeting with Duwenhoegger at Jeff's Superette, Sullivan drove his vehicle to the home of one of the planned victims—his girlfriend's mother. He knew that she was out of town at the time. According to the plan, Duwenhoegger was to enter the home through a basement window and rig the window so that he could later re-enter the home and commit murder. Duwenhoegger was unable to get into the window and, after a short while,

returned to Sullivan's car with the tools. Sullivan drove Duwenhoegger back to his vehicle parked at Jeff's Superette.

Later that day, Duwenhoegger was arrested for two counts of conspiracy to commit first-degree murder. A jury convicted Duwenhoegger of both counts and he was sentenced to consecutive terms of 190 and 180 months in prison.

On October 5, 1999, the Nicollet County Attorney's Office filed a complaint to forfeit Duwenhoegger's vehicle. The district court granted the county's motion for summary judgment, finding that Duwenhoegger used the vehicle to transport himself to and from the meetings and to transport tools used in furtherance of the conspiracy. This appeal followed.

### ISSUES

I. Did the district court err by ordering forfeiture of a vehicle on summary judgment where the vehicle transported a participant in a conspiracy to a meeting site and transported tools used in the conspiracy to a rendezvous site?

II. Does the civil forfeiture constitute a second punishment in violation of the double jeopardy clauses of the United States and Minnesota constitutions?

### ANALYSIS

■ On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

### I.

■ Duwenhoegger contends that the district court erred by ordering the forfeiture of the vehicle. He argues that be-cause the vehicle was only used on four occasions to transport him to the location where he met with Sullivan and to transport "ordinary tools," no nexus was established between the forfeited property and the underlying crime.

Under Minnesota law,

[a]ll personal property is subject to forfeiture if it was used or intended for use to commit or facilitate the commission of a designated offense.

Minn.Stat. § 609.5312, subd. 1 (2000). Conspiracy to commit first-degree murder is a "designated offense" as defined in the statute. Minn.Stat. § 609.531, subd. 1(f)(2).

In *City of Worthington Police Dept. v. One 1988 Chevrolet Berreta,* we concluded that using a vehicle for transportation to and from the site of a third-degree burglary and using the vehicle to transport a stolen item to another person constituted a sufficient nexus to the crime to subject the vehicle to forfeiture even though the vehicle was not used to commit an element of the crime. 516 N.W.2d 581, 582, 584 (Minn.App.1994). Similarly, in *United States v. Lewis,* the Eighth Circuit Court of Appeals held that 21 U.S.C. § 853(a)(2) (1988), which provides for forfeiture of property used to facilitate the commission of certain drug crimes, warranted the forfeiture of a vehicle when a conspirator drove it to meetings with other conspirators and when one meeting took place inside the vehicle. 987 F.2d 1349, 1356 (8th Cir.1993). A cellular phone was also subject to forfeiture because a conversation was made using it that was "an overt act in furtherance of [the crime]." *Id.* The court concluded that there was a sufficient nexus between the property forfeited and the conspiracy to distribute cocaine to justify the forfeiture because the vehicle was sufficiently connected to the underlying crime of conspiracy to distribute cocaine.

*Id.* at 1356–57. In contrast, a vehicle used simply to transport a heroin buyer to the airport for a flight to Mexico, where the buyer bought heroin, was not sufficiently connected with the crime of buying heroin to facilitate the crime where the contraband was never in the car and no negotiations took place inside the vehicle. *United States v. One 1970 Buick Riviera,* 374 F.Supp. 277, 280 (D.Minn.1973).

■■■ Here, the crime underlying the forfeiture is *conspiracy* to commit first-degree murder. As noted, the forfeiture statute requires that we determine whether the property subject to forfeiture was used to commit or facilitate the crime. Minn.Stat. § 690.5312, subd. 1. The crime of conspiracy requires an agreement between two or more people to commit a crime and an overt act in furtherance of the conspiracy. *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001). The overt act may be the slightest action on the part of a conspirator. *State v. St. Christopher,* 305 Minn. 226, 235, 232 N.W.2d 798, 804 (1975). Duwenhoegger committed several overt acts in furtherance of the conspiracy and each time used the 1987 Jeep to facilitate the commission of these overt acts. He met four times with Sullivan to create a plan and, each time they met, Duwenhoegger drove the 1987 Jeep to the meeting site. The plan they developed involved breaking into the home of one of the victims while she was out of town and rigging a basement window so that he could later secretly enter the home when the victim returned. To accomplish this plan, Duwenhoegger used his vehicle to transport tools to the agreed rendezvous site. Once he brought the tools to the rendezvous site, he immediately transferred them to Sullivan's vehicle, rode with Sullivan to victim's residence, and used the tools in an unsuccessful attempt to break into the victim's home. The fact that Duwenhoegger

is a carpenter and therefore would have been transporting the tools for legitimate purposes is of no import. The fact remains that the tools were used in committing an overt act in furtherance of the conspiracy.

We hold that the use of the vehicle to transport tools used to commit an overt act in furtherance of a conspiracy, and its use in transporting a · conspirator to a site where he formulated the conspiracy plan with a co-conspirator, facilitated the crime and provided a sufficient nexus to warrant forfeiture of the vehicle.

## II.

■■■ Appellant contends that this forfeiture constitutes a second punishment and therefore violates the double jeopardy clauses of the United States and Minnesota constitutions. "[A] criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy only if the forfeiture constitutes punishment." *City of Pine Springs v. One 1992 Harley Davidson,* 555 N.W.2d 749, 750 (Minn.App. 1996) (citation omitted). In determining whether a civil forfeiture constitutes "punishment" for double jeopardy purposes, we follow the two-step test set forth in *United States v. Ursery,* 518 U.S. 267, 277–78, 116 S.Ct. 2135, 2142, 135 L.Ed.2d 549 (1996). *Lukkason v. 1993 Chevrolet Extended Cab Pickup,* 590 N.W.2d 803, 807 (Minn.App. 1999), *review denied* (Minn. May 18, 1999). *Ursery* first requires that we examine the forfeiture statute to determine whether the forfeiture is intended to be, or by its nature is, criminal and punitive rather than civil and remedial. *Id.* If the legislature designates forfeiture as civil, we presume that forfeiture does not implicate double jeopardy concerns. *Id.* Here, the Minnesota forfeiture statute is specifically defined as a "civil in rem action and is

independent of any criminal prosecution." Minn.Stat. § 609.531, subd. 6a (2000).

The second prong of the *Ursery* test requires a showing by the "clearest proof" that a forfeiture under the statutory scheme is so punitive in form and effect as to render it criminal. *Lukkason,* 590 N.W.2d at 807. Here, Duwenhoegger argues that the forfeiture constitutes a second punishment under the facts of this case. But we have previously held that the forfeiture of a 2000 Ford Excursion for a DWI offense was not so punitive so as to constitute second criminal punishment. *City of New Brighton v. 2000 Ford Excursion,* 622 N.W.2d 364, 369 (Minn.App. 2001), *review denied* (Minn. Apr. 17, 2001). Certainly the forfeiture of a 14-year-old vehicle after a conviction for conspiracy to commit first-degree murder is not the type of forfeiture that is so punitive so as to constitute a second punishment.

## DECISION

We affirm the district court's determination that the civil forfeiture in this case is warranted because Duwenhoegger used the vehicle to facilitate several overt acts in furtherance of the conspiracy and that the forfeiture does not constitute double jeopardy. Because no genuine issues of material fact exist, we conclude that Duwenhoegger's vehicle is subject to forfeiture as a matter of law.

Affirmed.

AMUNDSON, Judge (dissenting).

I respectfully dissent. Under Minnesota law, personal property may be subject to forfeiture if "used to commit or facilitate the commission of" a listed offense, including conspiracy to commit first-degree murder. Minn.Stat. § 609.531, subd. 1(f)(2) (2000), Minn.Stat. § 690.5312, subd. 1 (2000). But forfeitures are not favored. *City of Faribault v. One 1976 Buick LeSabre,* 408 N.W.2d 584, 588 (Minn.App.1987).

While forfeiture proceedings are not of course, criminal in nature, their effect, when invoked, is to permanently deprive the owner of the forfeit property of its use. To the extent that the owner of forfeit property is caused loss and inconvenience resulting from the commission of certain offenses, the forfeiture provisions are punitive in effect and are subject to careful scrutiny by the [c]ourt. *Id.* (quoting *United States v. One 1970 Buick Riviera,* 374 F.Supp. 277, 279 (D.Minn.1973)). To the extent that forfeiture provisions penalize a person for participating in a designated offense by the loss of use of property, the forfeiture statute is in effect a quasi-penal statute. *Id.* Penal statutes are strictly construed and any doubt is resolved in favor of the defendant. *Id.*

Duwenhoegger's vehicle was only remotely connected to the crime barely more than the alarm clock that woke him up that morning. Each in its unique way facilitated the accomplishment of the crime. Here there was a discrete beginning to Duwenhoegger's criminal activity, and Duwenhoegger involved his vehicle only before that point.

The underlying crime was conspiracy to commit first-degree murder. The overt acts of this conspiracy, making Duwenhoegger's actions a crime, consisted of the clandestine meetings to plot the deed and also driving to an intended victim's residence to attempt a break-in. Duwenhoegger did not use this vehicle in any one of those endeavors. Each of the four meetings took place outside of Duwenhoegger's vehicle. His accomplice, Sullivan, drove Duwenhoegger, and the tools used in the break-in, to the intended crime site in his own vehicle. Duwenhoegger and Sullivan left the scene of the failed attempt in that

same vehicle. Duwenhoegger simply used his vehicle to travel to and from a meeting place four times. His vehicle was not itself used for any activity that was inherently criminal. Employing the majority's reasoning that the vehicle was subject to forfeiture because it facilitated the crime, will there be any practicable stopping point? Wouldn't anything that a perpetrator used to prepare for the act be subject to forfeiture? This cannot be the law.

This case is essentially like *One 1970 Buick Riviera*, where a vehicle was used to transport a heroin buyer to the airport for a flight to Mexico. 374 F.Supp. 277, 280 (D.Minn.1973). In that case, the court denied the forfeiture because neither the negotiations to purchase the heroin, nor the contraband itself, was ever in the vehicle and therefore the use of the vehicle did not make the commission of the crime less difficult. *Id.* Thus, the vehicle was not sufficiently connected with the crime of buying heroin to "facilitate" the crime. Similarly, in *State by Mendota Heights Police Dept. v. Coley*, we denied forfeiture where the owner drove from Oklahoma to Minnesota; then, the next morning, took a bus to his ex-wife's home where he committed the underlying crimes. 453 N.W.2d 64, 65 (Minn.App.1990). The district court decided that the owner's use of the car to drive to Minnesota from Oklahoma constituted a sufficient connection to the crime to subject the car to forfeiture. *Id.* at 66. Because there was no evidence that the owner came to Minnesota to commit a crime, or that he even used the car the day of the crime, we determined there was not a sufficient nexus between the vehicle and the crime to warrant forfeiture. *Id.* The courts in *One 1970 Buick Riviera* and *Coley* limited forfeitures to instances where the forfeited property is used to commit or facilitate the actions which themselves constitute crimes, not those

which obliquely facilitated conduct culminating in transgressive behavior.

I wonder if the majority's reliance on *City of Worthington Police Dept. v. One 1988 Chevrolet Berreta*, 516 N.W.2d 581 (Minn.App.1994), is not misplaced. In that case the vehicle was used not only to transport the burglar to the burglary location, but also to transport a stolen item away from the burgled building. *Id.* at 582. Similarly, the majority cites to *United States v. Lewis*, another conspiracy case. But, in *Lewis*, the vehicle was subject to forfeiture in a conspiracy not only because the vehicle owner drove the vehicle to a meeting point to meet with other conspirators, but also because one of the conspirators' meetings actually took place inside the vehicle. 987 F.2d 1349, 1356 (8th Cir.1993).

Because this vehicle was never used to commit or facilitate any act that directly constituted a crime, I do not believe the forfeiture statute should apply, and I respectfully dissent.